IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

NATIONAL CITY HEALTHCARE FINANCE,  )
etc.,                              )
                                   )
                    Plaintiff,     )
                                   )
       v.                          )     No.  08 C 7242
                                   )
REFINE 360, LLC, et al.,           )
                                   )
                    Defendants.    )

                   MEMORANDUM OPINION AND ORDER

   National City Healthcare Finance, a division of National City Commercial Capital Corporation a/k/a National City Commercial Capital Company, LLC ("National City") has sued Refine 360, LLC ("Refine") as lessee and Dr. Talmage Raine as guarantor under a now-defaulted equipment lease. National City has moved for a default judgment against both Refine and Dr. Raine.[1] This memorandum opinion and order sends National City's counsel back to the drawing board to prepare and present a revised submission that is not infected with the taints that attach to its current version.

---

   [1] National City has also joined Plastic Surgeons Associated, S.C. ("Plastic Surgeons") as a codefendant, seeking in part to obtain ownership and control of 500 shares of Plastic Surgeons' stock. But when Plastic Surgeons' counsel moved to strike that request because the Illinois Medical Corporation Act of 1987 prohibited ownership of stock in such a corporation by anyone other than a practitioner licensed under that statute (805 ILCS 15/13), National City's counsel receded from that prayer for relief, and it was stricken. Plastic Surgeons has remained as a defendant because of its claimed corporate guaranty (which is in dispute), but it is not a target of the current motion.

It takes no more than a rudimentary understanding of the concept of damages flowing from a lessee's breach, which has triggered the premature termination of a lease, to recognize that the lessor's consequent entitlement is the sum of (1) any past due rents plus (2) the present value of the future installments of lease-prescribed rent up to the end of the lease term plus (3) the present value of the anticipated fair market value of the leased property at the end of the lease term (when it would have reverted to the lessor in the ordinary course), minus (4) the current value of the leased property, which has been recaptured prematurely by the lessor by reason of the lease termination--to which sum there should be added appropriate prejudgment interest to compensate for the lessor's loss of yield from the date of default. Indeed, both in the private practice and since coming to the bench this Court has encountered many leases (whether equipment leases, real estate leases or what have you) that prescribe just such appropriate relief against delinquent lessees.

But that is not at all the formulation that National City's lawyers[2] have crafted in its standard printed form of Lease Agreement ("Lease") and in the Lease's brief Personal Guaranty

---

[2] It should be made plain that the term "lawyers" does not refer to the local litigation counsel for National City, who would be unlikely to have played any role in the drafting of National City's form document. Instead those counsel have simply inherited that document in the current litigation.

covering the leased equipment. Here, in legible form so as to spare the reader the task of making out the tiny print in the Lease document, is the relevant portion of the Lease's Terms and Conditions ¶14, captioned "Remedies":[3]

> If a Default occurs, Lessor may do one or more of the following: (i) Lessor may cancel or terminate this Lease or any other agreement that Lessor has entered into with Lessee; (ii) Lessor may require Lessee to immediately pay Lessor, as compensation for loss of Lessor's bargain and not as a penalty, a sum equal to the Stipulated Loss Value; (iii) Lessor may require Lessee to deliver the Equipment to Lessor as set forth in paragraph 7; (iv) Lessor or its agent may peaceably repossess the Equipment without court order and without liability for such entry or for damage to property or otherwise; and (v) Lessor may exercise any other right or remedy available at law or in equity. Lessee agrees to pay all of Lessor's costs of enforcing Lessor's rights against Lessee including reasonable attorney's fees and Lessee will not make any claims against Lessor for damages or trespass or any other reason.

And the term "Stipulated Loss Value" is defined this way in Terms and Conditions ¶10:

> The "Stipulated Loss Value" for particular Equipment shall be an amount equal to (i) the total of all Rent and any other amounts, if any, due with respect to such Equipment as of the date of payment of the Stipulated Loss Value, plus (ii) all future Rent with respect to such Equipment, plus (iii) the then estimated FMV of such Equipment as of the end of the initial Term of Lease for such Equipment (assuming no loss or damage).

That formulation, which calls for a current cash payment that simply _aggregates_ items (ii) and (iii) described in Terms

---

[3] What follows in the text does not reproduce the portion of that paragraph that deals with the credit described as item (4) in the preceding paragraph of the text.

and Conditions ¶10, rather than properly discounting them to present value, is a prototypical penalty provision of the type that to this Court's knowledge no court will enforce. In that respect, although National City's Lease and Personal Guaranty forms prescribe Ohio law as the source of the rules of decision both for the Lease and the Personal Guaranty, it has chosen to sue here in Illinois despite the fact that both Terms and Conditions ¶1 and the Personal Guaranty specify Ohio courts as having "exclusive jurisdiction" (as well as containing the Ohio choice-of-law provision). Moreover, National City's counsel have called upon Illinois statutory law in the current motion's prayer for prejudgment interest from the date of default (Motion ¶6 cites 815 ILCS 205/4(1)--more on that subject later).

Under those circumstances National City may well be viewed as having opted to look to Illinois substantive law as well as to its Illinois-based choice of forum. But whether or not that is so, the principles that differentiate between lease provisions that constitute penalties and those that qualify as proper liquidated damages provisions are really universal in American law, so that this opinion will look to Illinois caselaw (with which this Court is most familiar) on that score in any event.

In that regard this Court has consistently held in the same context of equipment lease damage provisions, in decisions going as far back as two decades or more--see, e.g., Heller Fin., Inc.

4

v. Burry, 633 F.Supp. 706 (N.D. Ill. 1986)--that provisions such as that prescribed by Lease ¶14 constitute penalties and are hence unenforceable. Heller relied on the then-recent opinion in Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1289-90 (7th Cir. 1985), which said this in the course of an extensive discussion of the subject (including the inappropriateness of interjecting policy considerations into the federal courts' obligation to adhere to state law):

> To be valid under Illinois law a liquidation of damages must be a reasonable estimate at the time of contracting of the likely damages from breach, and the need for estimation at that time must be shown by reference to the likely difficulty of measuring the actual damages from a breach of contract after the breach occurs. If damages would be easy to determine then, or if the estimate greatly exceeds a reasonable upper estimate of what the damages are likely to be, it is a penalty.

As in Lake River and Heller Fin., Lease Terms and Conditions ¶14 "is a penalty and not a liquidation of damages, because it is designed always to assure [National City] more than its actual damages" (Lake River, id. at 1290, adapted to this case). And that means the Terms and Conditions provision is unenforceable.

With that said, it is impossible to tell what relief should be afforded to National City. Motion ¶6 refers only to the affidavit of National City's Litigation Specialist Tina Bowling ("Bowling") (Motion Ex. F) in claiming (without disclosing her underlying calculation) the sum of $874,827.50, and neither the Motion nor the Bowling affidavit gives a clue as to the

5

derivation of that figure.  In addition, if and to the extent that any prejudgment interest is in fact awardable, a simple reading of 815 ILCS 205/4(1) reveals that the 9% rate specified there simply does not apply to the current situation (that provision deals only with what may be a permissible rate when stipulated or agreed to in written contracts, something that was not done in this instance).  Instead any permissible prejudgment interest must be limited to the 5% rate specified in 815 ILCS 205/2.

Finally, something more should be added about the consequences that attach to a litigant's inclusion of a penalty formulation that is by definition unenforceable, as National City has done here.  This Court's admittedly brief look at the subject has revealed only cases that say a party guilty of such inclusion may be relegated to recovery of its actual damages (see, e.g., <u>Grossinger Motorcorp., Inc. v. Am. Nat'l Bank & Trust Co.</u>, 240 Ill.App.3d 737, 752, 607 N.E.2d 1337, 1347 (1st Dist. 1992)).  In candor, that seems an inadequate outcome in a case such as this one, where actual damages are readily ascertainable (something that is often not the case where a party seeks to substitute a liquidated damages provision that it hopes is reasonable and hence enforceable).  If a lessor such as National City has the prerogative to insert a clearly overblown damages provision, comfortable in the knowledge that its invalidation will simply

6

put the lessor back in the situation that it would have occupied in the absence of that provision, every incentive for a lessor to prepare a reasonable contractual provision vanishes.  That would leave the lessor free to recover the contractually prescribed excessive amounts from unsuspecting lessees or, where lessees are in default, to obtain such unwarranted amounts through courts that have not thought about the problem--an intolerable no-lose and possible-win situation for the lessor.

This Court has not arrived at a definitive solution to that problem.  But one thing that may temper such an unacceptable outcome in the present case may be a holding that the invalidity (and hence the nonenforceable nature) of Terms and Conditions ¶14 necessarily includes the unenforceability of the portion of that paragraph that eliminates the so-called American Rule, under which each party bears its own litigation costs, by shifting to the lessee and the guarantor the liability for the lessor's costs of enforcement, including attorney's fees.

In any event, for the present this Court denies National City's motion for default judgment as currently tendered.  Such denial is without prejudice to reassertion of a revised motion in a proper manner consistent with this opinion.

_____
Milton I. Shadur
Senior United States District Judge

Date:  April 9, 2009